**Susan COHN and Walter Cohn, her husband, Plaintiffs,**

v.

**G.D. SEARLE & CO., Defendant.**

**Civ. A. No. 74–450.**

United States District Court,
D. New Jersey.

Dec. 7, 1984.

966

Walter R. Cohn, Thomas E. Cohn, South Orange, N.J., for plaintiffs.

Shanley & Fisher by Raymond M. Tierney, Jr., Susan M. Sharko, Morristown, N.J., for defendant; Sidley & Austin, Chicago, Ill., of counsel.

Robinson, Wayne, Levin, Riccio & LaSala by Joseph F. Lagrotteria, Newark, N.J., and Shea & Gardner by I. Michael Greenberger, Washington, D.C., for Brinco Mining Limited as amicus curiae.

DEBEVOISE, District Judge.

*Procedural History*

Plaintiffs, Susan and Walter Cohn, who are husband and wife, instituted this action in the New Jersey Superior Court against defendant G.D. Searle & Co. The complaint alleges that Susan Cohn suffered a stroke and that the stroke was caused by her use of an oral contraceptive manufactured by Searle.

Susan Cohn's stroke occurred in 1963. In late 1969 or 1970 plaintiffs became aware that there may have been a causal link between use of the contraceptive and the stroke. Suit was instituted in 1974, more than ten years after the stroke and approximately four years after plaintiffs became aware of the possibility of a causal relationship between the stroke and Searle's contraceptive.

After removing the case to this court Searle moved for summary judgment based upon New Jersey's 2–year statute of limitations. N.J.S.A. 2A:14–2. Plaintiffs resisted the motion, relying on N.J.S.A. 2A:14–22 which tolls the statute of limitations for a cause of action against a foreign corporation that "is not represented" in New Jersey "by any person or officer upon whom summons or other original process may be served." Judge Meanor, to whom the case was then assigned, granted Searle's motion, ruling that the tolling provision was invalid under the Equal Protection Clause and that, therefore, the 2–year statute of limitations barred plaintiffs' action. *Cohn v. G.D. Searle & Co.*, 447 F.Supp. 903 (D.N.J.1978).

Plaintiffs appealed. The Court of Appeals reversed, holding that there was a rational basis for the tolling provisions and that consequently the New Jersey statute does not violate the Equal Protection Clause. *Hopkins v. Kelsey-Hayes, Inc.*, 628 F.2d 801 (3d Cir.1980).

The United States Supreme Court granted certiorari. It too concluded that the New Jersey statute does not violate the Equal Protection Clause. *G.D. Searle & Co. v. Cohn*, 455 U.S. 404, 102 S.Ct. 1137, 71 L.Ed.2d 250 (1982). In a footnote it addressed Searle's due process contentions. As to the argument that the tolling statute violates due process by unfairly and irrationally denying certain foreign corporations the benefit of the statute of limitations without furthering any legitimate societal interest, the Court stated that "this due process argument is nothing more than a restatement of [Searle's] equal protection claim." 455 U.S. at 412, n. 7, 102 S.Ct. at 1143, n. 7. Because it was not raised in the Court of Appeals the Court declined to address Searle's other due process argument, namely, that it was deprived of due process because it could obtain the benefit of New Jersey's statute of limitations only by appointing an agent to accept service, and that such appointment would subject it to suit in New Jersey when there otherwise would not be the minimum contacts required for suit. *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

The Supreme Court discussed but did not decide the question whether the tolling provision violates the Commerce Clause. It did not resolve this issue for two reasons. First, neither the district court nor the Court of Appeals addressed the question directly, although in a footnote the district court suggested that the tolling provision would violate the Commerce Clause. 447 F.Supp. at 911, n. 17. Second, it was unclear under New Jersey law whether the tolling statute required a corporation to register to do business in New Jersey pursuant to N.J.S.A. 14A:13–2 in order to obtain the benefit of the statute of limitations or whether the mere appointment of an agent would suffice.

In view of the unsettled state of New Jersey's law, the Court remanded the case to the Court of Appeals so that it might "determine whether [Searle's] Commerce Clause argument, if it was properly raised below, has merit." 455 U.S. at 414, 102 S.Ct. at 1144. The Court of Appeals remanded the case to this court for a decision on the validity of the tolling statute under the Commerce Clause. *Hopkins v. Kelsey-Hayes, Inc.*, 677 F.2d 301 (3d Cir.1982).

In 1982, after remand, Searle moved for summary judgment on the ground that the tolling statute is unconstitutional under the Commerce Clause and also on the due process ground which it raised but which was not decided by the Supreme Court. The Attorney General of New Jersey moved to intervene and cross-moved for summary judgment. Judge Meanor granted the intervention motion. Plaintiffs joined in the Attorney General's cross-motion. Judge Meanor stayed proceedings until final disposition of a New Jersey case which required that the State Supreme Court decide what action a foreign corporation must take in order to escape the tolling effect of N.J.S.A. 2A:14–22.

The New Jersey Supreme Court has now eliminated any ambiguity which may have existed in the tolling statute. In *Coons v. American Honda Motor Co.*, 94 N.J. 307, 463 A.2d 921 (1983) it held (i) that foreign corporations may designate an agent for service of process only by obtaining a certificate of authority to do business; (ii) the tolling statute is a forced licensure provision and as such is in violation of the Commerce Clause; and (iii) the decision would be given retrospective effect, making it applicable to all matters that had not reached final judgment at the time of that decision.

Thereafter the plaintiff in *Coons*, supported by numerous *amici curiae* (including the plaintiffs in the instant case), filed a petition for rehearing on all issues. The Court granted the petition, limited to the retroactivity issue. After rehearing and further consideration it changed its position on retroactivity and a majority of the Court ruled: "We now hold as a matter of state law that *Coons I* is to be applied prospectively only, from the date of that decision, August 3, 1983." As further explicated by the Court, "... the statute of limitations as to foreign, unrepresented corporations commences to run as of [August 3, 1983]." *Coons v. American Honda Motor Co., Inc.*, 96 N.J. 419, 422, 435, 476 A.2d 763 (1984).

Although the New Jersey Supreme Court decided only the state law retroactivity question, it discussed both state and federal cases and proceeded as if state law and federal law on the subject were "inspired by the same considerations." 96 N.J. at 426, 476 A.2d 763.

There is now pending in the United States Supreme Court a petition for a writ of certiorari to review the decision in *Coons II*. That Court will, of course, finally decide the issues now before us, but in view of the importance of this case to both parties and in view of the long delay to which the case has already been subjected, I believe I should rule on the same issues raised by the pending motions in light of *Coons I* and *II*.

### Conclusions of Law

There can be no question that the New Jersey Supreme Court has decided definitively the meaning of N.J.S.A. 2A:14–22, which tolls the running of the statute of limitations against foreign corporations which are not "represented" in New Jersey. It held in *Coons I* "that a foreign corporation must obtain a certificate to do business in this state, under N.J.S.A. 2A:13–4, in order to achieve 'representation' in the context of N.J.S.A. 2A:14–22." 94 N.J. at 309, 463 A.2d 921.

Two questions of pertinence to the present case remained after the New Jersey Supreme Court decided the statutory question: (i) Does N.J.S.A. 2A:14–22, as so interpreted, unconstitutionally burden interstate commerce? and (ii) If it is concluded that N.J.S.A. 2A:14–22 does unconstitutionally burden interstate commerce, should such a conclusion be applied retroactively or prospectively? In *Coons I* the New Jersey Supreme Court held that as a matter of federal law the statute does unconstitutionally burden interstate commerce by requiring a foreign corporation engaged exclusively in interstate commerce to obtain a certificate to do business in order to gain the advantage of the statute of limitations. In *Coons II* the New Jersey Supreme Court held that as a matter of

state law, its holding of unconstitutionality should be applied prospectively.

■ A. *Applicable Law:* Both parties agree that federal law governs the question of the constitutionality of N.J.S.A. 2A:14–22. Since this is a federal question the issue must ultimately be decided by the United States Supreme Court. Although the decision of the New Jersey Supreme Court applying federal law to the question is both persuasive and instructive it is not binding, and under the mandate of the United States Supreme Court and the Court of Appeals I am required to make an independent determination of the constitutionality of the tolling statute under the Commerce Clause.

Plaintiffs urge strenuously that I am bound by the decision in *Coons II* that, assuming the unconstitutionality of the tolling statute, the constitutional determination is to be applied prospectively and not retroactively. However the cases cited by plaintiffs involve interpretation of state statutes and the effect to be given to changes in state law, not, as in the present case, the question of the retroactivity of federal constitutional decisions.

It would be difficult to reconcile rationally a holding that federal law will be applied to determine the constitutionality of a statute but that the states remain free to determine under state law when and how the ruling of unconstitutionality will be applied. Such a rule would provide a tool for nullification of constitutional decisions and does not constitute current law. For example, the United States Supreme Court reviews state court decisions on the retroactivity of new federal constitutional protections for criminal defendants, thus holding by clear implication that federal law controls. *Brown v. Louisiana,* 447 U.S. 323, 100

S.Ct. 2214, 65 L.Ed.2d 159 (1980). Federal law governs the retroactivity question in this case.

The New Jersey Supreme Court did not even purport to apply federal law when deciding the retroactivity question. Therefore, while *Coons II* may be instructive by way of analogy, it does not address the federal question implicated in the present motions.[1]

■ B. *Burden on Interstate Commerce:* I conclude that the New Jersey Supreme Court correctly decided that interstate commerce is unconstitutionally burdened by the requirement that in order to avoid the effect of N.J.S.A. 2A:14–22 a foreign corporation must qualify to do business in New Jersey. The United States Supreme Court has held repeatedly that a state cannot discriminate against a foreign corporation engaged in interstate commerce merely because it has failed to qualify to do business in that state. *E.g., Allenberg Cotton Co. v. Pittman,* 419 U.S. 20, 95 S.Ct. 260, 42 L.Ed.2d 195 (1974). This is just what New Jersey's tolling statute does. *Coons I* discusses in some detail application of the pertinent constitutional principles to N.J.S.A. 2A:14–22, 94 N.J. at 316–318, 463 A.2d 921, arriving at a conclusion with which I agree.[2]

■ C. *Retroactivity of Ruling of Unconstitutionality:* As stated above, the question whether a ruling that New Jersey's tolling statute is unconstitutional should be applied retroactively is a federal, not a state law question. The New Jersey Supreme Court did not address the federal question. In my opinion, applying federal law, the determination that the statute is unconstitutional must be given retroactive effect and should be applied, at the very least, to the instant case. The New Jersey

---

**1.** I appreciate that another judge in this district concluded that *Coons II* governs the retroactivity question. *Hopkins v. Kelsey-Hayes,* Civil Action No. 78–1646. For the reasons set forth above I do not agree.

**2.** Having decided that N.J.S.A. 2A:14–22 is unconstitutional on Commerce Clause grounds, it is unnecessary to address the Due Process

grounds which Searle advances here and which were not dealt with in footnote 7 of the Supreme Court's opinion. *G.D. Searle & Co. v. Cohn,* 455 U.S. 404, 412, 102 S.Ct. 1137, 1143, 71 L.Ed.2d 250 (1982). Further, I am not at all sure that the Court of Appeals mandate authorizes me to go beyond the Commerce Clause issue.

Supreme Court concluded, as have I, that N.J.S.A. 2A:14–22 imposes an impermissible burden on interstate commerce. That being the case, the burden should be lifted. A rule giving prospective effect to the decision of unconstitutionality permits this burden on commerce to perpetuate itself into the future. Thus if *Coons II* is accepted, foreign corporations engaged solely in interstate commerce will not be able to raise a limitations defense in future actions filed in New Jersey for two or six years from August 3, 1983 (depending on whether the action sounds in tort or asserts a property claim). This defeats the constitutional ruling striking down an impermissible burden on commerce. *Cf., New York v. Cathedral Academy,* 434 U.S. 125, 98 S.Ct. 340, 54 L.Ed.2d 346 (1977); *Lemon v. Kurtzman,* 411 U.S. 192, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1973); *United States v. U.S. Coin & Currency,* 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971).

Plaintiffs urge that application of the balancing test articulated in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971) would require prospective application of the constitutional ruling. I do not agree. I am not at all sure that a balancing test is called for in a situation such as this where there is an immediate burden on commerce of an extensive and pervasive nature. However, even if the balancing test is applicable, it would not call for prospective application of the ruling of unconstitutionality in this case.

In *Chevron* the Court noted that it had recognized the doctrine of non-retroactivity outside the criminal area in both constitutional and non-constitutional cases. It stated:

> In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, see, *e.g., Hanover Shoe v. United Shoe Machinery Corp., supra* [392 U.S. 481], at 496 [88 S.Ct. 2224, 2233, 20 L.Ed.2d 1231

(1968)], or by deciding an issue of first impression whose resolution was not clearly foreshadowed, see, *e.g., Allen v. State Board of Elections, supra* [393 U.S. 544], at 572 [89 S.Ct. 817, 835, 22 L.Ed.2d 1 (1969)]. Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." *Linkletter v. Walker, supra* [381 U.S. 618], at 629 [85 S.Ct. 1731, 1738, 14 L.Ed.2d 601 (1965)]. Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity." *Cipriano v. City of Houma, supra* [395 U.S. 701], at 706 [89 S.Ct. 1897, 1900, 23 L.Ed.2d 647 (1969)].

None of these factors are present in the instant case.

In *United States v. Johnson,* 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982) (a criminal case) the Court explained that the initial *Chevron* test (applicable to civil cases) required a determination that the decision be a "clear break" with past law. Such a determination may be made only if a decision "[1] explicitly overrules a past precedent of [the court]; or [2] disapproves a practice [the court] arguably has sanctioned in prior cases; or [3] overturns a longstanding and widespread practice to which [the court] has not spoken, but which a near-unanimous body of lower court authority has expressed approval." 457 U.S. at 551, 102 S.Ct. at 2588.

The decision in *Coons I* does not meet *Chevron's* first criterion either as stated in *Chevron* or as explicated in *Johnson.* It was well established as a matter of federal law that a state may not discriminate against a foreign corporation engaged in interstate commerce merely because it has failed to qualify to do business in that state. There has always been the likeli-

hood that N.J.S.A. 2A:14–22 had just that effect. At the most there was confusion on the subject, see the New Jersey Supreme Court's discussion of this confusion in *Coons II*, 96 N.J. at 432–433, 476 A.2d 763. While, according to the New Jersey Supreme Court, *Coons I* was new law, it "did not literally alter precedent because there was none on the *holding* of the case." 96 N.J. at 433, 476 A.2d 763. Thus *Coons I* insofar as it interpreted N.J.S.A. 2A:14–22 was not a clear break with past law. It decided questions as to which there had been confusion and controversy.

The second *Chevron* criterion requires that the court look at the history and purpose of the rule and determine whether retrospective operation will further or retard its operation. The purpose of the constitutional rule which governs this case is to free interstate commerce from the burdens which might be imposed by the individual states through which that commerce flows. Retroactive application of *Coons I* furthers that objective; prospective application defeats it.

As to the third criterion, general equitable considerations must be weighed. In the present case plaintiff Susan Cohn suffered a stroke in 1963. Walter R. Cohn, her husband, is both a co-plaintiff and the attorney for himself and his wife. By 1970, as found by Judge Meanor, he knew that his wife had had a cerebral vascular accident which may have been caused by Searle's contraceptive. That knowledge would, under usual circumstances, have started the statute of limitations running. By April 1970 he had compiled a medical-legal file. He asserts that he ascertained that Searle did not have an agent in New Jersey for purposes of service of process and that he relied on that fact and the tolling statute when he decided to defer filing suit until 1974. His reasons for waiting, he claims, were his desire to obtain more concrete medical information as to the causal connection and his wife's emotional and psychological condition at the time.[3]

This is a tragic situation, but one which plaintiffs could readily have avoided by commencing an action within two years of 1970 when they discovered the causal relationship. In 1970 the scope and effect of the tolling statute was not at all clear. At that time there was case law which suggested that circumstances other than qualifying to do business in New Jersey would avoid the effect of the tolling statute. For example, one court suggested that the tolling statute would not govern an action in which the foreign corporation was subject to service of process under R.S. 39:7–2, which provided for service on foreign corporations and others by serving the Director of Motor Vehicles in suits arising out of automobile accidents occurring in New Jersey. Further, it was urged that the tolling statute should not apply to any foreign corporation that was amenable to the personal jurisdiction of the New Jersey courts through application of the long-arm rule or otherwise.

Although *Whalen v. Young*, 28 N.J.Super. 543, 101 A.2d 64 (Law Div.1953) held that R.S. 39:7–2 permitting service on the Director of Motor Vehicles did not serve to avoid the effect of the tolling statute, exactly the opposite result was reached in 1962, when a trial court held that in such a situation a foreign corporation was represented in New Jersey and an action against it was not affected by the tolling statute. *Ferraro v. Ferro Trucking Co.*, 72 N.J.Super. 519, 179 A.2d 74 (Law Div. 1962). The language of the court in *Ferraro* emphasizing that the foreign corporation was amenable to service of process at all times and that statutes of limitation serve important policy goals should have alerted the careful attorney that there were risks entailed in relying on N.J.S.A. 2A:14–22 in any situation where a foreign corporation was subject to service under New Jersey's court rules or statutes.

In the present case Searle was amenable to service of process at all times under

---

**3.** These facts are set forth in an affidavit of Walter R. Cohn sworn to on November 16, 1983 and apparently submitted to the New Jersey Supreme Court. A copy of the affidavit was attached to plaintiffs' brief in opposition to Searle's motion for summary judgment.

N.J.Ct.Rule 4:4–4(c)(1) either by service upon one of Searle's detail persons visiting New Jersey doctors and hospitals or by mailing process to its principal place of business under the long-arm provision of the Rule. *See Avdel Corp. v. Mecure*, 58 N.J. 264, 277 A.2d 207 (1971). Prior to 1980 respectable legal authorities urged that the statute tolling the limitations periods within which actions could be brought against foreign corporations unrepresented in New Jersey did not apply to foreign corporations which were amenable to long-arm service. That position was rejected in *Velmohos v. Maren Engineering Corp.*, 83 N.J. 282, 416 A.2d 372 (1980), a case decided long after plaintiffs in the present case instituted their action. However, in 1970, when plaintiffs became aware of a possible cause of action against Searle, there was no assurance that views like those expressed by the dissenting Justices in *Velmohos* would not be adopted in New Jersey:

I would construe N.J.S.A. 2A:14–22 to toll the statute of limitations as to a foreign corporation against which there is a cause of action in this State only in a situation where such corporation is not amenable to personal jurisdiction.

Defendant corporations were subject to long-arm jurisdiction in this State at all relevant times as found by the trial court. See R. 4:4–4(c)(1). Indeed, service was made upon them pursuant to the rule. To hold that despite this, a plaintiff can sit back for any number of years and file suit at his pleasure against such foreign corporations, is to do violence to the concept of limitations of actions. The construction placed upon N.J. S.A. 2A:14–22 by the majority opinion, while following the literal language of the statute, frustrates the very purpose of the tolling provision and places this Court with a minority of jurisdictions. See Annotation, *"Tolling of statute of limitations during absence from state as affected by fact that party claiming benefit or limitations remained subject to service during absence of nonresidence,"* 55 A.L.R.3d 1158 (1974). As not-

ed in the annotation, a majority of courts have refused to give application to tolling provisions when the party claiming the benefit of limitations has remained amenable to personal jurisdiction.

A recent comment in 10 Seton Hall L.Rev. 585 (1980) entitled "The Tolling Provision of the Statute of Limitations—a Haven for the Dilatory Plaintiff," makes a critical analysis of N.J. S.A. 2A:14–22 and the position now taken in the majority opinion and rejects it on constructional as well as constitutional grounds. The comment concludes by stating that "[a] statute that serves to placate the dilatory plaintiff while denying an important right to a nonresident defendant is an anomaly in a jurisdiction noted for progressive developments in the law corresponding to the changes in the circumstances to which the law applies." *Id.* at 613. Despite the rigidity of some tolling and limitations statutory provisions, this Court has always construed them to effectuate the true statutory purpose. See, *e.g., Galligan v. Westfield Centre Service, Inc.*, 82 N.J. 188 [412 A.2d 122] (1980); *White v. Violent Crimes Compensation Board*, 76 N.J. 368 [388 A.2d 206] (1978). It has not done so today.

Although I find it unnecessary to reach the issue, the statutory construction of N.J.S.A. 2A:14–22 adopted by the majority also raises substantial questions of due process and equal protection of the laws. I would reverse the Appellate Division and reinstate the judgment of the trial court dismissing the complaint. 83 N.J. at 197–199, 416 A.2d 372. New Jersey attorneys should, therefore, have been aware of the constitutional and interpretive risks of reliance on the tolling provisions of N.J.S.A. 2A:14–22.

The dissenting opinion of three Justices in *Coons II* would have held that under state law "[i]rrespective of the general retroactivity of the *Coons I* decision, there should be no question that those responsible for effecting the change in law should benefit by their efforts"; else there would be no incentive for private attorneys to challenge existing possibly unconstitutional

laws. 96 N.J. at 436, 476 A.2d 763. Searle was among those who were considered to have effected a change in the law. One of these dissenting Justices, Justice Garibaldi, went further and urged that even under state law *Coons I* should be given complete retroactive effect. She applied the first *Chevron* test (without reference to the gloss which *Johnson* may have put upon it) and concluded that *Coons I* established a new rule of law. However, she concluded, for certain of the reasons I have set forth above, that the second and third *Chevron* tests were not met.

Thus, although it is truly to be regretted that plaintiffs in this case will not have their day in court, the marginal equities in this case do not compel the conclusion that implementation of important constitutional principles should be deferred.

Searle's motion for summary judgment will be granted. The cross-motions for summary judgment of New Jersey's Attorney General and of plaintiffs will be denied.[4] Searle's attorneys are requested to present an appropriate form of order.

---

**4.** On September 18, 1984 New Jersey's Attorney General wrote to the court advising that "[i]n light of the decisions in *Coons I* and *II,* it no longer appears necessary for the Attorney General to participate in the present proceeding." Regardless of the Attorney General's non-participation, his and plaintiffs' cross-motions for summary judgment are still pending and should be disposed of.