Joseph and Florence LOVE, Plaintiffs,

v.

JOHNS–MANVILLE CANADA, INC., et al., Defendants.

Civ. A. No. 82–2541.

United States District Court,
D. New Jersey.

May 29, 1985.

Ergood & Gavin by Richard S. Mannella, Westmont, N.J., for plaintiffs.

Horn, Kaplan, Goldberg, Gorney & Daniels, P.C. by Jonathan Eron, Atlantic City, N.J., for third party defendant Owens Corning Fiberglas, Inc.

Enright, Porter, Lenny & McGrath by David A. Walker, Bloomfield, N.J., for third party defendant, Pacor, Inc.

Law Offices of Henry Simon by Jill E. Haley, Newark, N.J., for defendant/third party plaintiff Pittsburgh Corning Corp.

OPINION

CLARKSON S. FISHER, Chief Judge.

In this asbestos-related products liability action, third party defendants Pacor, Inc. and Owens Corning Fiberglas, Inc.[1] have moved for summary judgment[2] on the basis of the decision in *Cohn v. G.D. Searle Co.*, 598 F.Supp. 965 (D.N.J.1984), *appeal docketed*, No. 85–5048 (3rd Cir. Jan. 21, 1985), in which the District Court retroactively applied the New Jersey Supreme Court's decision in *Coons v. American Honda Motor Co.*, 94 N.J. 307, 463 A.2d 921 (1983), *cert. denied*, — U.S. —, 105 S.Ct. 808, 83 L.Ed.2d 800 (1985) invalidating the tolling provision of N.J.S.A. 2A:14–

---

1. Owens Corning Fiberglas' motion was joined by the following parties:
    a. Third Party Defendants—Fibreboard Corporation, Nicolet, Inc., Keene Corporation, Keene Building Products Corporation, Raymark Industries, Inc., GAF Corporation, Eagle-Picher Industries, Inc.;
    b. Defendant/Third Party Plaintiffs—Carey Canadian Mines, Ltd., and Pittsburgh Corning Corporation.

2. Owens Corning Fiberglas' and Pacor's are motions are filed pursuant to Fed.R.Civ.P. 14 which gives a third party defendant the right to assert against plaintiff any defense which defendants/third party plaintiffs have to the plaintiff's claim.

22 (West 1952) (hereinafter "the tolling provision") to bar a products liability claim. For the reasons stated hereafter, the motions are denied.

I. Facts

Plaintiffs Joseph and Florence Love instituted this action in August 1981 seeking damages for injuries resulting from Mr. Love's exposure to asbestos-containing products during the course of his employment at various shipyards. Mr. Love was first diagnosed as suffering from asbestosis in 1970. In his deposition he admitted that he did not institute legal action for his injuries at that time because he felt he could still earn a living.

Only several years later did the Loves consult a lawyer regarding a claim for Mr. Love's asbestos-related injuries.[3] At that time they found their claims barred by the two year statute of limitations applicable to personal injury claims. *See* N.J.S.A. 2A:14–2 (West 1952). However, plaintiffs commenced this action in August 1981 in reliance on the tolling provision.[4]

During the pendency of this action, the New Jersey Supreme Court issued its opinion in *Coons I*, which invalidated the tolling provision.[5] There the Court held that the tolling provision amounted to a "forced-licensure provision" which, when required of foreign corporations, unconstitutionally burdened interstate commerce. In *Coons I* the Court initially provided for retrospective application of its holding, making its decision applicable to all matters which had not reached final judgment as of the date of its decision. *Id.*, 94 N.J., at 318–19, 463 A.2d at 927.

In 1984 the New Jersey Supreme Court granted plaintiff's petition for rehearing limited to the issue of retroactive application of the holding in *Coons I*. In *Coons v. American Honda Motor Company*, 96 N.J. 419, 476 A.2d 763 (1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 808, 83 L.Ed.2d 800 (1985) ("*Coons II*"), the New Jersey Supreme Court reversed its earlier position, and held "as a matter of *state law* that *Coons I* is to be applied prospectively only from the date of that decision, August 3, 1983." *Id.* at 422, 476 A.2d at 765 (emphasis added).

Since the date of *Coons II* two decisions in this district have addressed the question of retroactive application of *Coons I*. In the first of these, *Hopkins v. Kelsey-Hayes*, No. 78–1646 letter op. (D.N.J. June 21, 1984) (Brotman, J.), the Court found *Coons II* controlling on the issue and applied *Coons I* prospectively.

The second, *Cohn v. G.D. Searle & Co.*, 598 F.Supp. 965 (Debevoise, J.), held that

---

**3.** Mr. Love admits that he did not file suit because he reached a point where he could no longer earn a living. He merely states that "as things got heated up people suggested I better go see a lawyer". He first consulted counsel in April 1981. Deposition of Plaintiff Joseph Love (Oct. 31, 1984) at 181–82, *Love, et al. v. Johns-Manville Canada, Inc., et al.*, No. 81–2541 (D.N.J.).

**4.** The tolling provision provides:

*[I]f any corporation ... not organized under the laws of this state, against whom there is ... a cause of action, is not represented in this state by any person or officer upon whom summons or other original process may be served, when [a] cause of action accrues or at any times before the expiration of the time so limited, the time or times during which ... such corporation ... is not so represented within this state shall not be computed as part of the periods of time within which such an action is required to be commenced by this to be commenced by this section.*

*Id.* (emphasis added).

**5.** The Appellate Division had previously affirmed the trial court's denial of defendant American Honda's summary judgment motion citing the tolling provision. *Coons v. Honda Motor Co., Ltd.*, 176 N.J.Super. 575, 424 A.2d 446 (App.Div.1980). After the New Jersey Supreme Court denied the parties' cross-motions for leave to appeal, the parties sought review in the U.S. Supreme Court. That Court consented to hear *Honda's* appeal, after which it vacated the judgment below and remanded to the Appellate Division for reconsideration in light of *G.D. Searle & Co. v. Cohn*, 455 U.S. 404, 102 S.Ct. 1137, 71 L.Ed.2d 250 (1982). In *Searle* the Court upheld the tolling provision against equal protection and due process challenges. It did not address a commerce clause challenge pending clarification of New Jersey law. Thereafter, the New Jersey Supreme Court certified *Coons* for appeal on its own motion.

*Coons I* should apply retroactively. In *Cohn* the Court rejected *Coons II* as controlling because that holding was based upon state law. *Id.* at 969. Instead the Court viewed the issue of the retroactivity of a federal constitutional decision as a question of federal law. It held:

> [A]pplying federal law, the determination that the statute (N.J.S.A. 2A:14–22) is unconstitutional [in *Coons I*] must be given retroactive effect and should be applied, at the very least, to the instant case.

*Id.* Subsequent to the decision in *Cohn,* the United States Supreme Court denied cross-petitions for writs of certiorari in *Coons.*[6]

## II. Conclusions of Law

Defendants' motions are supported by a recitation *seriatim,* of the retroactivity analysis in *Cohn,* concluded by an argument that this Court should follow the holding in *Cohn.* In opposition, plaintiffs urge that under the civil retroactivity standard announced in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the Court should apply *Coons I* prospectively.

### A. *Applicable Law*

While the parties are in apparent agreement on the applicable body of law controlling the retroactivity issue, this decision clarifies the basis upon which this Court concludes that federal law governs its decision.

■ *Coons II* applied state law to reach the conclusion that *Coons I* applies prospectively; however, Judge Debevoise in *Cohn* noted:

> It would be difficult to reconcile rationally a holding that federal law will be applied to determine the constitutionality of a statute but that the states remain free to determine under state law when

and how the ruling of unconstitutionality will be applied. Such a rule would provide a tool for nullification of constitutional decisions and does not constitute current law.

\* \* \* \* \* \*

> Federal law governs the retroactivity question in this case.

598 F.Supp. at 969. This Court believes *Cohn* accurately states the law. While no case expressly so holds, the precedents of the Supreme Court dictate the conclusion that federal law must govern the retroactive application and enforcement of federal constitutional rights by the states.

The Supreme Court frequently reviews state court decision on the retroactivity of new federal constitutional rulings. The unstated holding of such cases is that federal law controls the issue. *Cohn,* 598 F.Supp. at 969. *See, e.g., Brown v. Louisiana,* 447 U.S. 323, 326–27, 100 S.Ct. 2214, 2218–19, 65 L.Ed.2d 159 (1980) (reversing decision of Louisiana Supreme Court that United States Supreme Court's decision holding nonunanimous juries for nonpetty offenses unconstitutional should be applied only to juries empaneled after the date of the decision); *Michigan v. Payne,* 412 U.S. 47, 57, 93 S.Ct. 1966, 1971, 36 L.Ed.2d 736 (1973) (reversing decision of Michigan Supreme Court applying *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), retroactively). *See also Hankerson v. North Carolina,* 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977); *Ivan v. City of New York,* 407 U.S. 203, 92 S.Ct. 1951, 32 L.Ed.2d 659 (1972); *Adams v. Illinois,* 405 U.S. 278, 92 S.Ct. 916, 31 L.Ed.2d 202 (1972).

Furthermore, several state courts have acknowledged that federal law controls the retroactivity of federal constitutional deci-

---

6. Honda of Japan brought the main petition in the case, No. 84–385, complaining of the *Coons II* decision in favor of prospectivity. Plaintiff Coons filed his cross-petition, No. 84–591, seeking review of the New Jersey Supreme Court's holding in *Coons I,* that the tolling provision

violates the commerce clause of the federal constitution. *See Honda Motor Co., Ltd. v. Coons,* — U.S. ——, 105 S.Ct. 808, 83 L.Ed.2d 800 (1985) (Rehnquist, J., dissenting from denial of certiorari in No. 84–591).

sions.[7] *See, e.g., People v. Burnick,* 14 Cal.3d 306, 535 P.2d 352, 121 Cal.Rptr. 488 (1975) (under U.S. Supreme Court retroactivity principles, decision that Fourteenth Amendment requires proof beyond reasonable doubt in mentally disordered sex offender proceedings must be retroactively applied); *State v. Bernard,* 391 So.2d 1180, 1181 (La.1980) (in *Brown v. Louisiana,* 447 U.S. 323, 100 S.Ct. 2214, U.S. Supreme Court ordered retroactive application of decision in *Burch v. Louisiana,* 441 U.S. 130, 99 S.Ct. 1623, 60 L.Ed.2d 96 (1979), prohibiting nonunanimous six-member jury verdicts; hence, 5–1 verdict returned against defendant in a pre-*Burch* trial must be reversed); *Commonwealth v. Stokes,* 374 Mass. 583, 374 N.E.2d 87, 91–92 (1978) (decision in *Hankerson v. North Carolina,* 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977), applying retroactively the Supreme Court's decision concerning constitutional requirements for jury charge on self-defense in *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), requires reversal of defendant's pre-*Mullaney* conviction); *People v. Patterson,* 39 N.Y.2d 288, 383 N.Y.S.2d 573, 578, 347 N.E.2d 898, 903 (1976), *aff'd,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) (U.S. Supreme Court retroactivity precedents mandate retroactive application of federal constitutional rule set forth in *Mullaney v. Wilbur* ); *Commonwealth v. Hilbert,* 476 Pa. 288, 382 A.2d 724, 727–28 (1978) (U.S. Supreme Court's decision in *Hankerson v. North Carolina,* 432 U.S. 233, 97 S.Ct. 2339, which mandates retroactive application of *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, requires reversal of defendant's pre-*Mullaney* conviction).

Finally, the Court echoes the sentiment expressed in *Cohn,* that it would be somewhat anomalous to countenance a rule which would leave states free to implement or delay implementation of federal constitutional rulings on state law decisional grounds. This is particularly inappropriate when the federal ruling implicates the commerce clause, because that clause is meant to protect against "state action which imposes special or distinct burdens on out-of-state interests unrepresented in the states political process." *L. Tribe, American Constitutional Law* § 6–5 (1978).

**B.  *The Appropriate Federal Standard***

The issue of retroactivity of federal constitutional decisions in civil cases is governed by a three part balancing test adopted by the Supreme Court in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971).[8]

There the Court stated:

In our cases dealing the with nonretroactive question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, [citation omitted], *or by deciding an issue of first impression whose resolution was not clearly foreshadowed.* Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." [Citation omitted]. Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial ineq-

---

7.  The New Jersey Supreme Court's *Coons II* decision looms as something of a maverick applying state law standards to the issue of retroactivity of federal constitutional rulings.

8.  While *Chevron* was pending, the Supreme Court held in *Rodrigue v. Aetna Casualty & Surety Co.,* 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969), that state law, rather than admiralty law, including state statutes of limitation, applied to personal injury actions relating to fixed structures on the Outer Continental

Shelf. *Chevron,* involved a suit for personal injury suffered by the plaintiff while working on the defendant's drilling rig located on the Outer Continental Shelf. At the time *Chevron* was instituted, plaintiff's action was subject to limitation only by the admiralty doctrine of laches. The *Chevron* suit was filed within three years of the injury but outside the one-year statute of limitations which *Rodrigue* later held applicable.

uitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity." [Citation omitted].

404 U.S. at 106–07, 92 S.Ct. at 355. In principle both parties agree that *Chevron* controls this Court's decision. Defendants, however, insist, as is stated in *Cohn*, that a subsequent Supreme Court decision has modified the first *Chevron* factor, thus restricting those instances in which prospectivity is the rule.

On this issue *Cohn* stated:

In *United States v. Johnson,* 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982) (a criminal case) the Court explained that the initial *Chevron* test (applicable to civil cases) required a determination that the decision be a *"clear break"* with past law. Such a determination may be made only if a decision "[1] explicitly overrules a past precedent of [the court]; or [2] disapproves a practice [the court] arguably has sanctioned in prior cases; or [3] overturns a longstanding and widespread practice to which [the court] has not spoken, but which near-unanimous body of lower court authority has expressed approval." 457 U.S. at 551 [102 S.Ct. at 2588].

598 F.Supp. at 970 (emphasis added). The Court disagrees with defendants' contention that *Johnson* requires a "clear break" standard in civil cases. *Johnson* merely held that "a decision of [the Supreme] Court construing the Fourth Amendment [was] to be applied to all convictions that were not yet final at the time the decision was rendered." 457 U.S. at 562, 102 S.Ct. at 2594.

In addition to the language noted by the *Cohn* Court, (cited above), defendants would no doubt point to that portion of the *Johnson* opinion which labels the *Chevron* test as the "clear break" principle for civil cases. *Id.* at 550 n. 12, 102 S.Ct. at 2587 n. 12. Both of these factors would appear to affect *Chevron's* first factor in some degree.[9]

However, having labeled *Chevron* the "clear break" principle, *Johnson* proceeded to cite the original *Chevron* test verbatim:

[a] decision establish[es] a new principle of law, either by overruling clear past precedent on which litigants may have relied ... *or by deciding an issue of first impression whose resolution was not clearly foreshadowed"* ....

*Id.* (emphasis added).

The conclusion that *Johnson* did nothing to alter *Chevron* in the civil context, is further buttressed by the express limitations imposed upon the scope of *Johnson* by the Court:

[W]e express no view on retroactive application of decisions construing any constitutional provision other than the fourth amendment.[10]

*Id.* at 562, 102 S.Ct. at 2594.

Finally, *Johnson* concludes stating that "all questions of civil retroactivity continue

---

**9.** *Johnson* has spawned considerable confusion in the retroactivity area. In *Solem v. Stumes,* 465 U.S. 638, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984), a case involving the retroactivity of a new fifth amendment criminal law decision, the Court seemed to curtail severely the scope of *Johnson,* stating that *Johnson's* application of the "clear break" test did not control in *Stumes* because the retroactivity question in *Stumes* "is controlled by prior precedent, arises on collateral review, and does not involve the Fourth Amendment". *Id.* at 1341 n. 3. This apparent curtailment of *Johnson* in *Stumes* was severely criticized by the three *Stumes* dissenters, *id.* at 1352–53, (Stevens, J., joined by Brennan, J., and Marshall, J., dissenting), and was not the first time members of the Supreme Court have disagreed over the scope of *Johnson. See, e.g., Mack*

*v. Oklahoma,* 459 U.S. 900, 103 S.Ct. 201, 74 L.Ed.2d 161 (1982) (O'Connor, J., joined by Rehnquist, J., dissenting to decision to remand case to state court for reconsideration in light of *Johnson;* dissenters arguing that *Johnson* is inapplicable because *Mack* involved fifth, not fourth, amendment, and that a remand would only confuse lower courts).

**10.** It is dubious whether *Johnson* has any vitality outside the fourth amendment area. *See Solem v. Stumes,* 465 U.S. 638, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984) (rule of *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378, *rehg. denied,* 452 U.S. 973, 101 S.Ct. 3128, 69 L.Ed.2d 984 (1981), applied prospectively; despite absence of "clear break", *Edwards* established new rule).

to be governed by the standards enunciated in *Chevron.*" *Id.*

This case, involving the retroactivity of a commerce clause ruling, is governed by *Chevron* and its progeny of civil retroactivity cases unembellished by *Johnson.*

### C. The Chevron Factors Applied

#### 1. Factor One—Objective Reliance

Defendants contend, as stated in *Cohn,* that, even under *Chevron, Coons I* fails to meet the first criterion for prospectivity. Under the facts in this record, the Court disagrees.

The first *Chevron* factor measures "objective reliance," i.e., it requires the Court to examine the state of the law to determine whether reasonable litigants would have been justified in their reliance upon the old rule. *See, e.g., Chevron,* 404 U.S. at 106–07, 92 S.Ct. at 355–56 (court must examine whether new rule overrules law on which litigants *may* have relied) (emphasis added); *Marino v. Bowers,* 657 F.2d 1363 (3rd Cir.1981) (court must look to the "reasonable perceptions" of litigants). *Accord Coons II,* 96 N.J. at 433, 476 A.2d at 772 ("we focus at the outset on which it is that litigants may have relied"). In short, this factor, determines whether the claimed reliance was justified.[11]

In evaluating objective reliance the Court must look to the state of the law at the time plaintiffs contemplated filing suit. The appropriate time period in this instance is the time between 1970, when plaintiffs' claims arose, and 1981 when plaintiffs commenced this action. *See Wachovia Bank & Trust Co. v. Nat'l. Student Marketing,* 650 F.2d 342 (D.C.Cir.1980).[12]

The inquiry thus commences with whether a litigant could have reasonably relied upon the tolling provision in light of the state of the law from 1970–81. Defendants characterize plaintiffs as litigants who chose to rely upon the tolling provision "with all its constitutional and interpretive risks." The risks, they claim, were apparent from cases the tolling provision applied to foreign corporations otherwise amenable to process.

By 1970 a handful of opinions had construed the tolling provision. *Whalen v. Young,* 28 N.J.Super. 543, 101 A.2d 64 (Law.Div.1953), held that a foreign corporation is not "represented" within the meaning of the tolling provision, so as to avoid the tolling effect, merely because it is subject to service through the Director of Motor Vehicles.[13]

---

**11.** . *Chevron* indicates that any questions of actual reliance, i.e., whether plaintiffs were influenced in their actions by the old rule is a consideration under the third *Chevron* factor. *See Chevron,* 404 U.S. at 108, 92 S.Ct. at 356.

**12.** *Wachovia* is the only case to address this issue squarely. There the Court questioned whether *Chevron* required the court to look at the law at the time of the decision or at when the claim rose. The Court held:

Chevron does not seek to compare a new decision to the extant law when the decision was published. Rather, *Chevron* favors comparing the decision to the law at the time the plaintiff claims to have relied upon it, i.e., the law after the claim arose and during the running of the limitations period. This choice is clear in the opinion itself. The very language of the first criterion set out in *Chevron* requires non-retroactive application of a decision that overrules law "on which litigants may have relied". Moreover, the Court repeatedly noted that its *Rodrigue* decision reversed the law that the plaintiff relied upon

when he contemplated filing suit. In reciting the facts, the Court remarked, "[w]hen this law suit was initiated, there was a line of federal court decisions" favoring application of admiralty law, and "the doctrine of laches, to the case".

*Id.* [404 U.S.] at 99 [92 S.Ct. at 351].

I am aware of the decision of the Third Circuit in *Marino v. Bowers,* 657 F.2d 1363 (3rd Cir.1981), which states that "a court must look both to the state of the law at the time of the [new] ruling and the reasonable perceptions of the persons who claimed to rely upon it." *Id.* at 1367. In *Marino,* unlike *Wachovia,* the timing of the inquiry was not in issue. Furthermore, on the basis of the analysis that follows, *Marino* points more clearly to prospectivity than does *Wachovia. See infra* p. 1463 (indicating that in 1981 the constitutionality of the tolling provision was settled).

**13.** Prior to *Whalen, Gotheiner v. Lenihan,* 20 N.J.Misc. 119, 25 A.2d 430 (Sup.Ct.1942), had similarly held the statute of limitations tolled as to a foreign corporation amenable to process through the Director of Motor Vehicles.

To the contrary, *Ferraro v. Ferro Trucking Co.*, 72 N.J.Super. 519, 179 A.2d 74 (Law Div.1962), found the statute tolled as to a foreign corporation amenable to process by service on the Director of Motor Vehicles.

In 1963 the New Jersey Supreme Court rejected an equal protection challenge to the tolling provision in *Lemke v. Bailey*, 41 N.J. 295, 196 A.2d 523 (1963). It held that with respect to individual (but not corporate) [14] defendants the statute was not tolled even when such defendants were amenable to process through service on the Director of Motor Vehicles.

In 1970 then, the weight of New Jersey authority did not indicate any constitutional or interpretive risks in relying on the tolling provision. *Ferraro*, the lone authority to the contrary, is premised upon a distinction between individual and corporate defendants which this Court believes is spurious. In 1974 another trial court opinion stated as much, thus further discrediting *Ferraro*.

In *Ferraro* the court distinguished the holding in *Whalen* and *Gotheiner* upon the basis that the latter opinions concerned an individual nonresident motorist, while *Ferraro* dealt with a nonresident corporate defendant. *This is a distinction without a difference and is illogical.*

\*      \*      \*      \*      \*      \*

There is no logical reason to treat corporate and individual defendants in a different manner. Standards applicable to one are applicable to the other.

*Lackovic v. New England Paper Tube Co., Inc.*, 127 N.J.Super. 394, 398, 317 A.2d 426, 428–29 (Law Div.1974) (emphasis added).

*Ferraro* is the source which defendants insist foreshadowed *Coons I.* Even if *Ferraro* otherwise foreshadowed *Coons I*'s commerce clause holding, this Court could not accept a substantially discredited trial

court opinion as a "clear foreshadowing" of the tolling provision's eventual demise.

Any doubt as to constitutionality or interpretive risks surrounding the tolling provision were allayed by the New Jersey Supreme Court's decision in *Velmohos v. Maren Engineering Corp.*, 83 N.J. 282, 416 A.2d 372 (1980). There the Court rejected due process and equal protection challenges to the tolling provision and held that the approach taken years earlier in *Lemke* applied with equal force to toll the statute of limitations as to foreign corporations amenable to process through long arm jurisdiction.

Thus, when plaintiffs filed their suit in 1981, the holding of invalidity in *Coons I* under the commerce clause was not clearly foreshadowed. The tolling provision had been on the books since 1949. Some form of tolling provision had been a fixture of New Jersey law since 1820. *See Lemke* 41 N.J. at 298, 196 A.2d at 525 (1963). The constitutional challenges under the due process and equal protection clauses had been settled.

The first mention of a potential commerce clause problem by an appellate court in *G.D. Searle & Co. v. Cohn*, 455 U.S. 404, 102 S.Ct. 1137, 71 L.Ed.2d 250 (1982), occurred only after this suit was commenced. Up to that point the only mention of potential commerce clause problems was in a footnote to the trial court's opinion in *Searle*, 447 F.Supp. 903, 911 n. 17 (D.N.J. 1978).

Thus, during the years 1970–81 there was little indication of the invalidation of the tolling statute as to foreign, unrepresented corporations on commerce clause grounds. Under these facts the declaration of *Coons I* was not clearly foreshadowed. A litigant would have been justified in relying upon the tolling provision.

2. Factor Two—*Burden v. Benefit*

The second *Chevron* factor directs the Court to examine "the merits and demerits

---

**14.** The *Lemke* Court did not rule on the effect of the tolling provision on foreign corporations stating it would "express no opinion on the

contradictory results of *Whalen* and *Ferraro*." 41 N.J. at 301, 196 A.2d at 526.

in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." *Linkletter v. Walker*, 381 U.S. 618, 629, 85 S.Ct. 1731, 1738, 14 L.Ed.2d 601 (1965). Defendants rely upon the terse analysis in *Cohn* for the proposition that prospective application of *Coons I* will retard its operation. In *Cohn* the court stated:

> "The purpose of the constitutional rule which governs the case is to free interstate commerce from the burdens which might be imposed by the individual states through which that commerce flows. Retroactive application of *Coons I* furthers that objective; prospective application defeats it."

598 F.Supp. at 971.

This position ignores the stark reality that in several cases involving civil statutes invalidated on constitutional grounds federal courts have opted for non-retroactivity. *See, e.g., Lemon v. Kurtzman*, 411 U.S. 192, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1973); *Cipriano v. City of Houma*, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969); *Allen v. State Board of Elections*, 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969); *England v. State Board of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). Clearly, this Court's analysis must go beyond the talismanic recitation in *Cohn.*

The Court notes at the outset that this is the most difficult of the *Chevron* factors to apply. *See, e.g., Marino v. Bowers*, 657 F.2d 1363 (3rd Cir.1981); *Ramey v. Harber*, 589 F.2d 753 (4th Cir.1978). In the absence of suggestion by any party of an appropriate standard[15] under which to scrutinize whether retroactivity will further or retard the operation of the holding in *Coons I*, the Court relies upon *Lemon v. Kurtzman*, 411 U.S. at 200, 93 S.Ct. at 1469, which teaches that questions of civil retroactivity are equitable in nature, involving a special blend of what is necessary,

fair and workable. *Id.* In weighing this determination a Court must look to the "practical realities and necessities inescapably involved in reconciling competing interests, notwithstanding that [some of] those interests have constitutional roots." *Id.*

*Lemon* thus requires a weighing of the benefits to be gained from retroactivity against the burdens imposed upon litigants as explicated under the first and third *Chevron* factors. *See, e.g., Ramey*, 589 F.2d at 753. *Accord Coons II*, 96 N.J. at 434, 476 A.2d at 772.

The Court concedes that the purpose of *Coons I* is to rid interstate commerce of the burden which the tolling provision might have imposed. Retroactive application would completely achieve the ultimate purpose of *Coons I*. However, when the Court examines the effect of the rule, prospectivity is called for. Plaintiffs argue that in this case the actual impact on interstate commerce is fairly negligible, i.e., while the tolling statute potentially burdened interstate commerce, in actuality it did nothing to deter defendants from marketing their products in New Jersey simply because they were compelled to register in New Jersey in order to permit recourse to the statute of limitations.

The Court finds the New Jersey Supreme Court's pronouncement on this factor persuasive.

> [T]he absence of any showing that in fact defendant and corporate *amici* suffered a burden borne of a compulsion to register in New Jersey to permit recourse to the statute of limitations ... [convinces us] that the purpose of the prior ruling is satisfied by [prospectivity].

96 N.J. at 434, 476 A.2d at 772.

In the absence of any actual demonstrated burden on interstate commerce the Court believes, on the balance, that the burden imposed by retroactivity far outweighs the incremental benefit that would accrue;

---

**15.** In some criminal cases rulings which go to the "truth of the fact finding process" are generally held to apply retroactively for otherwise their operation would be retarded. *See, e.g., Hankerson*, 432 U.S. 233, 97 S.Ct. 2339; *Ivan*, 407 U.S. 203, 92 S.Ct. 1951.

therefore, prospectivity will not hinder the operation of *Coons I.*

### 3. Factor Three—The Equities

The third *Chevron* factor directs this Court to examine the inequities imposed by retroactivity. On this point, defendants insist that this case is "on all fours" with *Cohn.* They characterize plaintiffs as those who chose to rely on the "tolling statute with all its interpretive risks." The gravamen of *Cohn* is that at the time plaintiff filed suit "a careful attorney" should have known there were risks in relying on the tolling provision. That *Cohn* is inapplicable to this case is patent. The *Cohn* Court noted that by 1980 (one year prior to the instant suit) the constitutional questions had been settled. 598 F.Supp. at 972. *See also supra* p. 1463.

Moreover, the equitable considerations here point, on the balance, toward prospectivity.

1. The retroactive application of *Coons I* would deprive plaintiff of any remedy whatsoever. This consideration weighed heavily in the *Chevron* decision. *See* 404 U.S. at 108, 92 S.Ct. at 356. In this case, invalidating the tolling provision in mid-suit is no different than the announcement in mid-suit in *Chevron* that a shorter statute of limitations governs the action. Here, as in *Chevron,* prospectivity merely preserves plaintiff's day in court.

2. Furthermore, this case has been pending through four years of costly pretrial. The case is scheduled to be pretried this month; a trial date is imminent. It would be particularly inequitable at this phase to bar this claim by retroactive application of *Coons I* where defendants have waited until this late stage to interpose this defense. If, as defendants insist, the invalidity of the tolling provision was "clearly foreshadowed" it is beyond comprehension that defendants have not raised it at an earlier phase.

3. In addition, a ruling in favor of retroactivity would countenance an anomalous situation wherein New Jersey state court litigants would continue to have viable claims because of the decision in *Coons II;* [16] whereas, litigants in federal court would no longer have a claim only because it was pending in the federal forum.[17]

One commentator has stated, "it is a fundamental ethical requirement that like cases should receive like treatment, that there should be no discrimination between one litigant and another except by reference to some relevant differentiating factor. The value of equality is at the root of our system of justice." *Currier, Time and Change in Judge-Made Law: Prospective Overruling,* 51 Va.L.Rev. 201, 237 (1965). Here there is no relevant differentiating factor; a holding of prospectivity would ensure equality of treatment of cases pending in both fora.

4. The examination of the equities should transcend those surrounding the immediate parties. *See, e.g., Ramey,* 589 F.2d 753; *Raggio v. Matunis,* 489 F.Supp. 16 (E.D.Pa.1979). *Accord Coons II,* 96 N.J. at 433, 476 A.2d at 772.

In *Ramey* the Court held *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (holding that discharge of nonconfidential, non-policymaking employees under patronage system violated first amendment), should be applied only prospectively. In reaching this conclusion, the Court noted under the third *Chevron* factor:

> "[I]f a decision could produce substantial inequitable results if applied retroactively, there is ample basis in [Supreme Court] cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity." [Citation omitted.] *We are con-*

---

**16.** The recent denial of the cross-petitions for certiorari in *Coons* makes *Coons II*'s prospectivity rule binding in the New Jersey state courts.

**17.** While defendants no doubt would contend that plaintiffs must suffer any adverse conse-

quences of their choice of forum, the Court notes that it is not at all uncommon for these asbestos-related cases to have been removed to federal court, thus placing the litigation in a forum contrary to a plaintiff's choice.

*vinced that both hardship and disruptive instability will result from retrospective application of Elrod.* Although we do not have any statistics showing the number of employees who would be affected, we may safely assume that there are thousands of patronage appointments in Virginia and in this circuit which will be subject to attack if *Elrod* is given retroactive application.

589 F.2d at 759–60 (emphasis added).

Similarly, there would be considerable hardship and instability within this state if *Coons I* is applied retroactively. The New Jersey Supreme Court noted the substantial inequities which would ensue to litigants in general. On this point *Coons II* states:

> [I]t would be most difficult, if not impossible, to forecast the number of claimants who might be affected by a holding that *Coons I* should be applied retroactively or, as the Attorney General points out, to measure "the extent and nature of the prejudice to be suffered by those potential plaintiffs who justifiably relied on the validity of the tolling statute."

> Despite those difficulties, we conclude that given the nature of this statute, we are justified in presuming that because of the tolling feature, many suits may not have been brought against unrepresented foreign corporations. The foreign corporations did not take any action to avoid whatever vulnerability the enactment created; they did not register in New Jersey. The history of nonaction by both the corporations and potential plaintiffs satisfies us that participants ... ordered their affairs in accordance with the tolling statute.[18]

96 N.J. at 433–34, 476 A.2d at 772.

The analysis is equally applicable here. To hold that potential or actual plaintiffs, who have delayed or completely foregone filing suit in reliance on the tolling provision are now forever barred from a remedy would work a substantially inequitable result.

5. Moreover, the conclusion that equities other than those surrounding the immediate parties are a salient consideration has "a virtue of practicality." *See Coons II*, 96 N.J. at 434, 476 A.2d at 772. A decision to apply *Coons I* prospectively based upon, *inter alia*, a weighing of such factors will avert the instability which would ensue in other pending cases by establishing a general rule to which parties can conform their conduct. Otherwise, this Court anticipates a proliferation of motions designed to test whether the tolling provision remains viable based on the peculiar facts of each plaintiff's case. As noted in *Coons II*, a Court "cannot construct a workable rule by questioning, in each case,

**18.** In his Brief in Opposition to the petition for certiorari the Attorney General expands upon the nature of the prejudicial result.

> There may exist potential plaintiffs, who had a cause of action against a foreign, unrepresented corporate defendant which was amenable to longarm service in New Jersey during the assumed tolling of the statute of limitations. Such plaintiffs, in strict reliance on the tolling statute and for reasons of convenience, strategy, expense and the like, opted to refrain from utilizing long-arm service as the only available means for instituting action in this State within the statute of limitations. Such potential plaintiffs would be seriously prejudiced by a retroactive application of *Coons I* since, but for the tolling statute, timely suit would have been commenced in New Jersey. In addition, there may be potentital plaintiffs who had a substantial cause of action against a foreign, unrepresented corporate defendant which was not amenable to long-arm service

in New Jersey. Such plaintiffs, but for the tolling statute and the anticipation of filing suit in New Jersey sometime in the future, would have presumably made effort to institute action in a foreign jurisdiction in order to prosecute the cause of action. The expense and inconvenience of instituting such an action would have been justified in light of the seriousness and/or substantiality of the cause of action. Clearly such plaintiffs would be severely prejudiced by a retroactive application of the tolling statute's invalidity particularly if the availability of the out-of-state forum were now foreclosed because the applicable statutes of limitation had run.

Attorney General's Brief in Opposition to Petition for a Writ of Certiorari to the Supreme Court of New Jersey at 9–10, *Honda Motor Co., Ltd. v. Walter P. Coons*, No. 83–353, *cert. denied,* — U.S. ——, 105 S.Ct. 808, 83 L.Ed.2d 800 (1985).

whether plaintiff successfully demonstrated actual reliance." *Id. See also Raggio v. Matunis,* 489 F.Supp. 16 (E.D.Pa.1979) ("the Supreme Court cases do not require this court to weigh the equity and reliance interests in each individual case where a rule may or may not be retroactively applied. I cannot apply a rule retroactively in one case and deny retroactive effect in another case.")

6. The single factor which points away from prospective application of *Coons I* is the inordinately long time these plaintiffs waited before filing their claim. Nearly 11 years passed between the time of diagnosis and the filing of the complaint. Defendants therefore contend that it is not inequitable to dismiss claims by plaintiffs "who slept on their rights" and that to hold otherwise would do violence to the concept of limitations. *See generally Velmohos,* 83 N.J. at 798; 416 A.2d at 381 (Sullivan, J., dissenting).

The Court realizes that plaintiffs cannot be said to have "actually relied" upon the tolling provision until they consulted an attorney sometime in 1981.[19] Thus, defendants' contention is somewhat well-taken. I find this consideration tempered, however, by what is an equally important portion (given its longevity)[20] of the New Jersey concept of limitations. The tolling provision specifically carved out an exception to the rule and stated a plaintiff need not take action.[21] *See Coons II,* 96 N.J. at 433, 476 A.2d at 772.

Defendants further argue that "actual reliance" is a *sine qua non* for prospectivity. In effect, they state that plaintiffs cannot claim the benefit of prospectivity without having proven they decided to forego filing suit in reliance upon the tolling provision.[22] The Court does not believe

this contention reflects a fair reading of *Chevron.* In *Chevron* plaintiff suffered injury in 1965. His delay in filing suit was not attributable to his knowledge of the limitations doctrine applied to his case. *See* 404 U.S. at 98, 92 S.Ct. at 351. In 1968, however, having consulted counsel, he filed suit. Only at that time could plaintiff have been said to *rely* upon the admiralty limitations doctrine applicable to his action. Yet, throughout the opinion, the Supreme Court spoke of plaintiff's reliance upon law in existence from 1965-68. *See id.* at 106, 107, 92 S.Ct. at 355, 356. Thus, to the extent *Chevron* requires actual reliance, that requirement is satisfied by plaintiffs' actual reliance on the tolling provision in filing this suit after consulting an attorney.

Furthermore, the inequity that may result to defendants from today's ruling is tempered by the continued availability of the defense of laches. If defendants have been prejudiced in their defense of this case by an inexcusable lapse of time, for which plaintiffs are at fault that defense may be interposed under state law. *See Velmohos,* 83 N.J. at 293 n. 10, 416 A.2d at 378 n. 10.

### III. *Conclusion*

On the balance, the Court concludes that under the objective standard of *Chevron's* first factor, litigants could have reasonably relied upon the tolling provision. Whatever confusion surrounded the tolling provision did not amount to a "clear foreshadowing" of the rule which *Coons I* announced. Moreover, with the sole exception of the absence of actual reliance by these plaintiffs until a very late stage, the equities point toward prospectivity. The record adequately details the considerable

---

**19.** Plaintiffs here are not like those in *Cohn* who, with knowledge of the statute after consultation with an attorney consciously decided to forebear filing suit. *See* 598 F.Supp. at 971.

**20.** *See* discussion of the history of the tolling provision *supra* p. 1463.

**21.** The Court finds no distinction between plaintiffs here and others such as those in *Wachovia*

or *Chevron.* In each case of limitations which ultimately was curtailed by intervening decisions.

**22.** Some commentators argue that is so. *See Corr, Retroactivity: A Study in Supreme Court Doctrine "As Applied",* 61 N.C.L.Rev. 745, 773 (1983).

hardship and burden to these litigants and others which would result from retroactivity. In light of the foregoing, the benefit to be gained from retroactivity is outweighed by the burdens which would ensue to litigants. The Court holds that as a matter of federal law, *Coons I* should be applied prospectively from August 3, 1983, the date of that decision.

Plaintiffs will submit an order reflecting the result reached herein. No costs.