**Pierre ROBINSON, Plaintiff,**

**v.**

**VISUAL PACKAGING, INC., Home-owners Warehouse, Inc., Service Merchandise Company, Inc., Hub Plastics, Inc., Unocal Chemical Division, Unocal Corp., a Division of Unocal Corp., and Polytop Corp., Individually, Jointly, and Severally, Defendants.**

**Civ. A. No. 86–5059 (JCL).**

United States District Court, D. New Jersey.

Jan. 26, 1989.

Thomas R. Ashley, Ashley & Charles, Newark, N.J., for plaintiff Robinson.

John H. Adler, McCarter & English, Newark, N.J., for defendant Homeowners Warehouse.

Jerome J. Graham, Jr., Ribis, Graham, Verdon & Curtin, Morristown, N.J., for defendant Unocal Chemical.

Harry Haushalter, Atty. Gen.'s Office, Trenton, N.J., for Atty. Gen. intervener-plaintiff.

Craig W. Miller, James & Addas, Jersey City, N.J., for defendant Visual Packaging.

James B. Moran, Hoagland, Longo, Oropollo, & Moran, New Brunswick, N.J., for defendant Polytop Corp.

William J. Cook, Brown & Connery, Camden, N.J., for defendant Hub Plastics.

## OPINION

LIFLAND, District Judge.

Plaintiff moves to file a Third Amended Complaint. Defendant Polytop moves for summary judgment and to file a third party complaint. Defendant Hub Plastics moves to dismiss the complaint. Defendant Unocal moves for summary judgment. Defendant Visual Packaging moves to file a third party complaint. The State of New Jersey intervenes in favor of upholding the constitutionality of N.J.Stat.Ann. 2A:14–22.

The Second Amended Complaint alleges that "[O]n or about August 18, 1985, while plaintiff was using [a container of] charcoal lighter fluid for its intended purpose, the container burst open and the contents combusted causing plaintiff to suffer substantial, severe and permanent burns on his body." Second Amended Complaint at ¶ 10. Plaintiff filed the original complaint with this court on December 29, 1986, and an amended complaint on August 14, 1987.

Counsel for plaintiff states by affidavit that on August 26, 1987, shortly after filing the amended complaint, he received a letter from defendant Visual Packaging, Inc., which revealed that several other firms manufactured parts of the container in question. Exhibit B to Affidavit of Cyril S. Hodge. After corroborative discovery plaintiff applied for and was granted leave to amend the complaint adding these firms as defendants. Exhibit C to Hodge Affidavit. Plaintiff filed a second amended complaint on February 16, 1988. Exhibit D to Hodge Affidavit. Plaintiff maintains that he was not aware of these other firms until he received the letter on August 26, 1987, and that there was no intentional delay or lack of due diligence in commencing the action against the defendants. Hodge Affidavit at ¶ 13–14. Plaintiff has provided the court with a copy of the cellophane wrapping of the charcoal lighter fluid container, which states that the container was manufactured by Visual Packaging, Inc. There is no indication from the wrapper that any other firms played a part in manufacturing the container. Exhibit A to Hodge Affidavit.

### Discussion

Defendants Hub Plastics, Inc., Polytop Corp., and Unocal Chemicals Division of Union Oil Co. were added as defendants in plaintiff's second amended complaint filed February 16, 1988. Hub Plastics moves to dismiss the complaint. Polytop and Unocal move for summary judgment. All of these defendants argue that any action against them is time-barred by New Jersey's two-year statute of limitations for personal injuries, N.J.Stat.Ann. § 2A:14–2.[1] They argue that the two-year period expired August 18, 1987, two years after plaintiff's

---

1. § 2A:14–2 states, "Every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this state shall be commenced within 2 years next after the cause of any such action shall have accrued."

injuries occurred, while they were not added as defendants until February 16, 1988, several months after the two-year period expired.

Plaintiff opposes these motions on two grounds. First, he argues that under New Jersey's "discovery rule," plaintiff's cause of action against Polytop and Unocal commenced on August 26, 1987, the day he first learned of their possible role in manufacturing the container, and plaintiff's cause of action against Hub Plastics commenced on January 21, 1988, when he first learned of Hub Plastics' possible role in manufacturing the container in a deposition of the president of defendant Visual Packaging.

Plaintiff advances a second argument against Hub Plastics and Polytop. Plaintiff argues that under N.J.Stat.Ann. § 2A:14–22, which tolls the running of the statute of limitations in actions against nonresident defendants who are not represented within New Jersey during the limitation period, Hub Plastics and Polytop, foreign corporations that have not filed a notice designating a representative to accept service of process, are by the express terms of the statute nonrepresented parties. Therefore, plaintiff claims, the statute of limitations never began to run in their favor in this case.

The constitutionality of § 2A:14–22 has been drawn in question in this case. In *Bendix Autolite Corp. v. Midwesco Enterprises, Inc.,* —— U.S. ——, 108 S.Ct. 2218, 100 L.Ed.2d 896 (1988), the Supreme Court

held that an Ohio statute, which Hub Plastics and Polytop claim is similar to 2A:14–22, was unconstitutional because it violated the Commerce Clause. Hub Plastics and Polytop contend that § 2A:14–22 is unconstitutional under *Bendix Autolite.*[2] The Attorney General of New Jersey has intervened in this case and opposes this contention.

### Discovery Rule

The discovery rule is a rule of equity and fairness. *See, e.g., Lopez v. Swyer,* 62 N.J. 267, 300 A.2d 563 (1973). "The essential purpose of the rule is to avoid harsh results that otherwise would flow from mechanical application of a statute of limitations." *See Vispisiano v. Ashland Chem. Co.,* 107 N.J. 416, 426, 527 A.2d 66 (1987). The discovery rule postpones the accrual of the limitations period until the plaintiff learns or with reasonable diligence should have learned of the existence of the facts which would equate with a cause of action. *Royal Indem. Co. v. Petrozzino,* 598 F.2d 816, 818 (3d Cir.1979); *Burd v. New Jersey Tel. Co.,* 76 N.J. 284, 291, 386 A.2d 1310 (1978).

██ Whether plaintiff did or did not exercise reasonable diligence in learning of the role of Hub Plastics, Polytop, and Unocal in manufacturing the container need not be decided, because the discovery rule is not applicable in this case. "[T]he discovery rule applies when a party, by the exercise of reasonable diligence, does not know he has a cause of action until some time after the infliction of the injury...." *Hernandez v. St. James Hosp.,* 214 N.J.Su-

---

**2.** § 2A:14–22 states:

> If any person against whom there is any of the causes of action specified in sections 2A:14–1 to 2A:14–5 and 2A:14–8, or if any surety against whom there is a cause of action specified in any of the sections of article 2 of this chapter, is not a resident of this State when such cause of action accrues, or removes from this State after the accrual thereof and before the expiration of the times limited in said sections, or if any corporation or corporate surety not organized under the laws of this State, against whom there is such a cause of action, is not represented in this State by any person or officer upon whom summons or other original process may be served, when such cause of action accrues or at any time before the expiration of the times

> so limited, the time or times during which such person or surety is not residing within this State or such corporation or corporate surety is not so represented within this State shall not be computed as part of the periods of time within which such an action is required to be commenced by the section. The person entitled to any such action may commence the same after the accrual of the cause therefor, within the period of time limited therefor by said section, exclusive of such time or times of nonresidence or nonrepresentation.
>
> A corporation shall be deemed represented for purposes of this section if the corporation has filed with the Secretary of State a notice designating a representative to accept service of process.

per. 538, 543, 520 A.2d 773 (App.Div.1986). Plaintiff "has been in possession of the container of lighter fluid since the date of the accident," Polytop Brief at 2. Although the wrapper on the container does not indicate that any firm other than Visual Packaging manufactured the container, "From the moment the accident occurred, plaintiff knew of facts that equated with a cause of action. ... Thus ... plaintiff is not entitled to protection of the discovery rule, and the statute of limitations began to run on the date of [his] injury." *Viviano v. CBS, Inc.*, 101 N.J. 538, 503 A.2d 296 (1986). Hub Plastics, Polytop, and Unocal were not added as defendants until after the statute of limitations expired. Plaintiff therefore cannot look to the discovery rule to prevent dismissal of the case as to defendants Hub Plastics, Polytop, and Unocal.[3]

Therefore, the "period provided by law" in this case is two years from the date of plaintiff's accident. Not having filed suit against Hub Plastics, Polytop, and Unocal within that period, plaintiff is not entitled to have claims against these parties relate back to the filing of the original complaint. *See Britt*, 590 F.2d at 62.

### Constitutionality of N.J.Stat.Ann. § 2A:14–22

For the reasons stated above, summary judgment as to defendant Unocal must be granted, since Unocal has a registered agent for service of process in New Jersey. However, plaintiff argues that Hub Plastics and Polytop's failure to designate an agent in New Jersey to accept service of process in the state tolls the statute of limitations pursuant to N.J.Stat.Ann. § 2A:14–22.

An earlier version of § 2A:14–22 was stricken by the New Jersey Supreme Court in *Coons v. American Honda Motor Co.*, 94 N.J. 307, 463 A.2d 921 (1983), *cert. denied*, 469 U.S. 1123, 105 S.Ct. 808, 83 L.Ed.2d 800 (1985) [hereinafter *Coons I* ], because it required foreign corporations to obtain certificates of authority to do business in New Jersey from the Secretary of State. The New Jersey Supreme Court deemed this to be a "forced licensure." 94 N.J. at 318, 463 A.2d 921. In *Coons v. American Honda Motor Co.*, 96 N.J. 419, 476 A.2d 763 (1984) [hereinafter *Coons II* ], the New Jersey Supreme Court held that their earlier ruling was prospective only. The New Jersey legislature added the following to the statute in an effort to preserve the statute: "A corporation shall be deemed represented for purposes of this section if the corporation has filed with the Secretary of State a notice designating a representative to accept service of process." *See* Senate Judiciary Committee Statement, Senate No. 953–L.1984, c. 131.

*Bendix, supra*, held that an Ohio tolling statute was unconstitutional because it forced out-of-state corporations to designate agents for service of process within Ohio in order to prevent the tolling of the statute of limitations as to the out-of-state corporation. The Supreme Court held that the tolling statute violated the Commerce Clause because requiring the designation of agents for service of process within Ohio could subject foreign corporations to Ohio's jurisdiction when they would otherwise not be so subject. This would constitute an unreasonably greater burden on out-of-state corporations than Ohio corporations. *See, e.g., Brown–Forman Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573, 578–79, 106 S.Ct. 2080, 2084–85, 90 L.Ed.2d 552 (1986), *cited in Bendix*, 108 S.Ct. at 2220.

■ The court holds that New Jersey's statute is indistinguishable for constitutional purposes from the Ohio statute in *Bendix*, and that under *Bendix* N.J.Stat.Ann. § 2A:14–22 is unconstitutional under the Commerce Clause of the Constitution.[4]

---

**3.** The fictitious-defendant rule is not available to plaintiff in federal court. *Royal Indem. Co. v. Petrozzino*, 598 F.2d 816, 820 (3d Cir.1979); *Britt v. Arvanitis*, 590 F.2d 57, 61 (3d Cir.1978).

**4.** § 2A:14–22 does not violate the Equal Protection and Due Process Clauses of the Constitu-

tion. *G.D. Searle & Co. v. Cohn*, 455 U.S. 404, 102 S.Ct. 1137, 71 L.Ed.2d 250 (1982); *Velmohos v. Maren Engineering Corp.*, 83 N.J. 282, 416 A.2d 372 (1980). The court's holding therefore is limited to finding § 2A:14–22 violative of the Commerce Clause.

The state's arguments favoring upholding N.J.Stat.Ann. § 2A:14–22 do not overcome the *Bendix* holding. The state argues first that the legislative intent of the New Jersey legislature in amending § 2A:14–22 shortly after the initial *Coons* decision suggests that this court should uphold the constitutionality of the statute. The court agrees that legislative intent is, as the state argues, a "critical question" in determining the constitutionality of a statute. State Brief at 11. However, the New Jersey legislature, in responding to *Coons I*, addressed a very different Commerce Clause issue, namely the "forced licensure" with the New Jersey Secretary of State. The amended statute places a lesser burden on foreign corporations than a "forced licensure," but it is a burden that was held unconstitutional in *Bendix* nonetheless. Legislative intent does not, therefore, preserve the constitutionality of § 2A:14–22.

The state also argues that an affidavit filed by Paul Wermuth, an attorney for the Secretary of State of New Jersey, shows that the New Jersey Secretary of State permits the filing of designations of representatives for service of process by unregistered foreign corporations only with respect to causes of action where minimal contacts for due process purposes exist in New Jersey. Attached as Exhibit A to the affidavit is one such filing by Cassiar Mining Corporation, where a representative is

designated "to accept service of process in those suits, *and only those suits*, where Cassiar is properly subject to *in personam* jurisdiction under New Jersey's long-arm rule, R. 4:4–4." (Emphasis added) The state argues that the court should uphold § 2A:14–22 by interpreting the statute to include this administrative practice.

The court rejects this argument. First, the State's alleged practice is not discernible from the wording of § 2A:14–22; it is impossible from the statute's wording for a foreign corporation to know that the Secretary of State allows a limited filing to be submitted. Second, the Supreme Court in *Bendix* rejected the argument that the foreign corporations enjoyed the "simple alternatives of designating an agent for service of process in Ohio or tendering an agency appointment to the Ohio Secretary of State," noting that "there is no statutory support for either option, and it is speculative that either device would have satisfied the Ohio requirements for the continued running of the limitations period." *Bendix*, 108 S.Ct. at 2222. This court is bound by the reasoning of the Supreme Court and will not read into the statute what is not in its language.[5]

### Prospective Application of this Court's Holding

■ The State argues that should the court find the statute to be unconstitution-

5. It is questionable whether the limited designation of an agent for service of process advocated by the Attorney General could in fact eliminate the burden found unconstitutional by the Supreme Court in *Bendix*. N.J.Rule 4:4–4(c)(1), which provides for *in personam* jurisdiction over a corporation by serving "any person authorized by appointment or by law to receive service of process on behalf of the corporation," reaches to the outermost limits of due process, regardless of defendant's activities in New Jersey. *Aridel Corp. v. Mecure*, 58 N.J. 264, 277 A.2d 207 (1971). Thus, it is conceivable that even a limited designation could subject a foreign corporation to *in personam* jurisdiction in New Jersey, not to mention the costs of litigating the issue. However, in light of the plain meaning of *Bendix* and of § 2A:14–22 the court will not resolve these concerns at this time.

The State has provided the court with the transcripts from two New Jersey state court decisions in *Armenti v. Carey Canada*, Docket No. L–45449–87, in which the constitutionality

of § 2A:14–22 was upheld. The court has considered and rejected their usefulness in this case. The first decision was decided on May 27, 1988, before *Bendix* was released. In the second decision, decided on September 16, 1988 following *Bendix*'s release, the court stated, "I believe that the Attorney General ... has correctly stated the law when he says the court, when deciding constitutionality of the statute, has the right and the duty to interpret it in such a manner that would remain constitutional if that is the intended purpose of the legislature.... The court has a right to perform judicial surgery so to speak." This decision was affirmed by the Appellate Division on September 22, 1988. The court rejects this reasoning on the ground that the court is bound by the Supreme Court's reasoning in *Bendix* that designating an agent for the service of process would "likely" subject defendants to *in personam* jurisdiction, and this exaction is an unreasonable burden on commerce. *Bendix*, 108 S.Ct. at 2222.

al, it should apply the determination prospectively only. State Brief at 14–18. This issue was addressed to the Supreme Court in *Bendix,* but was not considered because it was not raised until the case reached the Sixth Circuit. *Bendix,* 108 S.Ct. at 2222–23. The court, after careful consideration, concludes that today's holding must be applied prospectively.

At common law, a finding that a statute was unconstitutional was applied retroactively under the reasoning that the statute "was inoperative as though it had never passed." *Norton v. Shelby County,* 118 U.S. 425, 442, 6 S.Ct. 1121, 1125, 30 L.Ed. 178 (1886). Recently, however, the federal courts have recognized the massive relitigation and confusion that could arise if decisions were applied retroactively. Balanced with this concern, however, is the reality that prospective application of a court's decision would result in a Pyrrhic victory for the party or parties challenging the constitutionality of the statute. In light of these countervailing concerns the Supreme Court enunciated a three-part test to determine whether a decision is to be applied retroactively:

> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that "we must ... weigh the merits and demerits of each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective application would further or retard its operation." Finally, we have weighed the inequity imposed by retroactive application, for "where a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

*Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355–56, 30 L.Ed.2d 296 (1971) (citations omitted). In *Lemon v. Kurtzman,* 411 U.S. 192, 199, 93 S.Ct. 1463, 1468, 36 L.Ed.2d 151 (1973), the Court

noted: "However appealing the logic of *Norton* may have been in the abstract, its abandonment reflected our recognition that statutory or even judge-made rules of law are hard facts on which people must rely in making decisions and in shaping their conduct. This fact of legal life underpins our modern decisions recognizing a doctrine of nonretroactivity."

Applying the *Huson* test in this case, the court must first inquire whether its holding either overruled past precedent on which litigants may have relied or decided an issue of first impression whose resolution was not clearly foreshadowed. As the New Jersey Supreme Court in *Coons II* stated, "We must look to the law as it was at the time plaintiff contemplated starting suit."

When plaintiff was first injured and contemplated filing suit, *Coons I* had already invalidated the earlier version of § 2A:14–22, and the New Jersey legislature had amended the statute in an effort to preserve its constitutionality. This scenario was still in effect when plaintiff first learned of the presence of Hub Plastics, Polytop, and Unocal on August 26, 1987. *Bendix* reached the Supreme Court on November 2, 1987, —— U.S. ——, 108 S.Ct. 283, 98 L.Ed.2d 244 (1987), was argued on March 23, 1988, and decided on June 17, 1988. *Bendix* affirmed the holding of the district court for the Northern District of Ohio. The only opinions in the Third Circuit ruling on the constitutionality of § 2A:14–22 found the predecessor version unconstitutional under the Commerce Clause, but held, as did *Coons II,* that this holding was to be applied prospectively only. *Love v. Johns–Manville Canada, Inc.,* 609 F.Supp. 1457 (D.N.J.1985); *Cohn v. G.D. Searle & Co.,* 598 F.Supp. 965 (D.N.J.1984), *vacated in part in Cohn v. G.D. Searle and Co.,* 784 F.2d 460 (3d Cir.1986), *cert. denied,* 479 U.S. 883, 107 S.Ct. 272, 93 L.Ed.2d 248 (1986); *Hopkins v. Kelsey–Hayes,* No. 78–1646 (unpublished opinion June 21, 1984).

Thus, the scenario facing plaintiff as late as August 26, 1987, gave him no reason to doubt the validity of § 2A:14–22. The 1984

amendment to § 2A:14–22 following *Coons I* gave plaintiff every reason to believe that the statute of limitations would not bar amending the complaint to include as defendants foreign corporations that had not designated agents for service of process in New Jersey. The first part of the *Huson* test favors prospective application of today's holding.

Under the second part of the *Huson* test the court must assess the merits and demerits of the prior history of § 2A:14–22 to determine whether retroactive application of today's decision would further or retard the operation of the decision. The court concludes that the merits and demerits of the prior history of § 2A:14–22 show a desire by the New Jersey legislature to preserve the constitutionality of the statute, while both the state and federal courts have found that case law and pragmatic concerns dictate applying the invalidation of § 2A:14–22 prospectively. *See, e.g., Cohn,* 784 F.2d at 465 ("Although it is possible that prospective invalidation will permit maintenance of some suits that would not have been timely filed absent the tolling statute, we do not think that this slight marginal burden, if any, does violence to the Commerce Clause."); *Love,* 609 F.Supp. at 1464 ("[Defendants] ignore the stark reality that in several cases involving civil statutes invalidated on constitutional grounds federal courts have opted for non-retroactivity."); *Coons II,* 96 N.J. at 433, 476 A.2d 763 ("To be sure, it would be most difficult, if not impossible, to forecast the number of claimants who might be affected by a holding that *Coons I* should be applied retroactively or, as the Attorney General points out, to measure 'the extent and nature of the prejudice to be suffered by those potential plaintiffs who justifiably relied on the validity of the tolling statute.' "). The only cases to apply the invalidation of § 2A:14–22 retroactively, *Coons I* and the district court opinion in *Cohn,* were modified on rehearing and reversed, respectively, to impose prospective applications of the invalidation of § 2A:14–22. The second part of the *Huson* test thus favors prospective application of today's decision.

Weighing the equities imposed by retroactive application is a closer issue. Prospective application of today's holding imposes some inequity upon Hub Plastics and Polytop, for their efforts in persuading this court to invalidate § 2A:14–22 would benefit future foreign corporate defendants in New Jersey, not Hub Plastics and Polytop in the instant case. However, the court finds the concerns described in *Coons II,* the Third Circuit in *Cohn,* and the district court in *Love* to be persuasive in this case. The possible damage to plaintiffs in other cases, state and federal, who relied on § 2A:14–22 would indeed be great if this court applied its decision retroactively. In addition, today's holding does help Hub Plastics and Polytop in future cases as it does for other foreign corporate defendants in New Jersey. *Accord, Coons II,* 96 N.J. at 434–35, 476 A.2d 763. Finally, prospective application of today's decision will allow the New Jersey legislature to amend § 2A:14–22 in light of *Bendix,* hopefully as readily as it amended that statute in light of *Coons I,* with a minimal effect upon cases pending in New Jersey state and federal courts. For these reasons, today's decision will not be applied retroactively, and summary judgment is denied as to defendants Hub Plastics and Polytop.

### Other Motions

The motions by Visual Packaging and Polytop to file third-party complaints are unopposed, and are granted. Plaintiff's motion to file a Third Amended Complaint is granted only to the extent that it is consistent with the limitations expressed in this court's holding today.

An order accompanies this opinion.

### ORDER

Plaintiff moves to file a Third Amended Complaint. Defendant Polytop moves for summary judgment and to file a third party complaint. Defendant Hub Plastics moves to dismiss the complaint. Defendant Unocal moves for summary judgment. Defendant Visual Packaging moves to file a third party complaint. The State of New Jersey intervenes in favor of upholding the constitutionality of N.J.Stat.Ann. 2A:14–22.

For the reasons set forth in the accompanying opinion, IT IS on this 25th day of January, 1989, ORDERED that the motion of Hub Plastics to dismiss is DENIED; that the motion of Polytop for summary judgment is DENIED; that the motion of Unocal for summary judgment is GRANTED; that the motions of Polytop and Visual Packaging to file a third party complaint are GRANTED; and that plaintiff's motion to file a Third Amended Complaint is GRANTED consistent with the limitations expressed in today's opinion.